Grimes Poultry Processing Corp., Petitioner *v.*
Commonwealth of Pennsylvania, Unemployment
Compensation Board of Review, Respondent.

Argued June 10, 1977, before Judges WILKINSON,
JR., MENCER and ROGERS, sitting as a panel of three.
Judge KRAMER did not participate in the decision.

*Warren M. Davison,* with him *Calvin P. Spitler,
Spitler, Rowe & Kilgore,* and *Shawe & Rosenthal,* for
petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE MENCER, September 12, 1977:

José C. Gonzalez used to work for Grimes Poultry Processing Company (Grimes). The job required Gonzalez to slit the necks of chickens and remove their windpipes. It also required him to be in an environment and to perform activities which aggravated a painful arthritic condition.

In October 1975, after 2½ years of slitting Grimes' chicken necks, Gonzalez sought medical attention for his worsened condition. He was treated by Dr. William S. Kammerer, Assistant Professor of Medicine at the Hershey Medical Center. After some treatment, Dr. Kammerer wrote Grimes regarding Gonzalez' condition. He suggested that Gonzalez' arthritis-related complaints could be reduced if he could work in an area less cold and wet and perform activities which did not include heavy lifting or long periods of standing. About the same time, Gonzalez himself discussed the situation with his employer. He explained that the damp environment of the plant was adversely affecting his arthritis and making it painful to work. While there is a question whether Grimes offered Gonzalez another position, there is no question that Gonzalez felt incapable of performing any other job because of the dampness in the plant. Gonzalez left his neck-slitting position at the end of November 1975.

Thereafter, Gonzalez applied to the Bureau of Employment Security (Bureau) for unemployment compensation, and the Bureau attempted to ascertain his eligibility. The Bureau sent a Request for Doctor's Certification to Dr. Kammerer, who certified that

Gonzalez had been under his care. He further certified that musculoskeletal pain was the nature of Gonzalez' disability, that Gonzalez had been advised to quit his last job for reasons of health, and that he was presently able to accept gainful employment. Accordingly, the Bureau determined that Gonzalez had left work for a cause of a necessitous and compelling nature. He was granted benefits under Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1).

On appeal by Grimes, a referee affirmed the Bureau's determination after a hearing at which Dr. Kammerer's letter and certification were admitted without objection and Gonzalez confirmed that he had been advised to leave his job. On further appeal, the Unemployment Compensation Board of Review (Board) affirmed.

Grimes has appealed the Board's order to this Court, contending that Gonzalez has not properly substantiated his claimed cause of a necessitous and compelling nature and that he did not make a reasonable effort to preserve his employment. We reject these contentions.

Initially, we note that physical disability may constitute a necessitous and compelling reason for leaving one's employment and would not render a claimant ineligibile for unemployment compensation. *Kernisky v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 199, 309 A.2d 181 (1973); *accord, Shearer v. Unemployment Compensation Board of Review*, 26 Pa. Commonwealth Ct. 444, 364 A.2d 516 (1976). Of course, it is the claimant's burden to demonstrate that the disability does constitute such a reason. *See Shearer, supra; Tollari v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 589, 309 A.2d 833 (1973).

To establish physical disability as a cause of a necessitous and compelling nature, a claimant must demonstrate that he is suffering from a physical infirmity that would justify leaving his employment. *Shearer, supra; see Taylor v. Unemployment Compensation Board of Review,* 19 Pa. Commonwealth Ct. 391, 338 A.2d 702 (1975). Such demonstration must include medical evidence. *Kubiak v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 421, 371 A.2d 257 (1977); *Nedd v. Unemployment Compensation Board of Review,* 24 Pa. Commonwealth Ct. 514, 357 A.2d 268 (1976); *Unemployment Compensation Board of Review v. Perry,* 22 Pa. Commonwealth Ct. 429, 349 A.2d 531 (1975), *allocatur denied* (1976); *Taylor, supra.* This evidence must indicate more than that the claimant is disabled, *see Eckenrod v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 166, 325 A.2d 320 (1974), or that the claimant is suffering from some specified ailment. *See Tollari, supra.* The medical evidence must indicate that the job the claimant left was injurious to his health, *Taylor, supra; Tollari, supra,* and that he was advised to leave this job by his physician. *See Perry, supra; Eckenrod, supra; Elshinnawy v. Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 597, 317 A.2d 332 (1974).

In addition, employees with physical infirmities are required to make a reasonable effort to preserve their employment by requesting work compatible with their condition. *Shearer, supra; Nedd, supra; Tollari, supra.*

We conclude that the Board did not err in determining that Gonzalez left work for a cause of a necessitous and compelling nature. Dr. Kammerer's letter to the employer suggests that Gonzalez' job painfully aggravated his arthritis. Moreover, Dr.

Kammerer's certification, on the Bureau's form, indicates that Gonzalez was advised to leave his job for reasons of health.[1] Thus Gonzalez demonstrated that he suffered from a physical infirmity that justified his leaving Grimes' employment.

Nor does the record support the contention that Gonzalez failed to make a reasonable effort to preserve his employment. Rather, it indicates that he openly discussed his health problem with his employer and supplied his employer with his physician's recommendations. Further, the record does not indicate that any work compatible with Gonzalez' condition was available at Grimes' plant.

We therefore hold that material findings are supported by substantial evidence and that no error of law was committed in determining that Gonzalez was eligible for unemployment compensation under Section 402(b)(1). Accordingly, we affirm the Board's order.

---

[1] It has been suggested that Dr. Kammerer's certification does not satisfy the medical-evidence requirements because it was executed after Gonzalez had left work.

While the date of certification may have significance in some cases, it is but one of several factors to be considered. A more important factor is the specific information contained in the medical evidence. This approach is supported by case law. In *Shearer, supra*, another case dealing with certification on a Bureau form, it was not the date of execution but rather the lack of pertinent information which rendered the certification less than probative. An examination of cases dealing with doctors' letters dated after an employee's termination suggests the same conclusion. Thus in *Eckenrod, supra*, and *Elshinnawy, supra*, the letters did not state that the claimant had been advised by a physician to leave work. Likewise, the doctor's letter in *Tollari, supra*, failed to indicate that the claimant was unable to perform his last job or that the work was injurious to his health.

In the instant case we are more concerned with the fact that Gonzalez was advised by his physician to leave his last job for reasons of health than with when the physician verified that advice.

## ORDER

AND NOW, this 12th day of September, 1977, the order of the Unemployment Compensation Board of Review in the above captioned matter is hereby affirmed.

Judge KRAMER did not participate in the decision in this case.